Bruce **YOUNGMAN**, Plaintiff,

v.

Albert J. **TAHMOUSH**, et al.,
**Defendants.**

Court of Chancery of Delaware,
New Castle County.

Submitted Sept. 30, 1982.

Decided Jan. 5, 1983.

Kevin Gross, Morris & Rosenthal, P.A., Wilmington, and Mordecai Rosenfeld, P.C., New York City, for plaintiff.

James F. Burnett, Potter, Anderson & Corroon, Wilmington, and Kurt L. Schultz, and James R. Vogler, Winston & Strawn, Chicago, Ill., for defendants.

HARTNETT, Vice Chancellor.

Defendants moved to dismiss this stockholder's derivative action on the grounds that plaintiff has an incurable conflict of interest which precludes his representation of the stockholders. The motion must be denied.

I

This stockholder's derivative action was brought by plaintiff, Bruce Youngman, on behalf of all the stockholders of Frank B. Hall & Company ("Hall") for damages and other relief arising out of alleged improper actions taken by the Board of Directors of Hall in response to an incomplete takeover attempt by Ryder Systems, Inc. ("Ryder"). Plaintiff maintains that in response to Ryder's acquisition activity, the Board of Directors of Hall took detrimental and improper actions in that: (1) it released some executives from their binding commitments not to join competitors, upon the purchase of more than 12% of the Hall stock by an outside company; (2) it made available 190,000 shares of the Hall common stock to key officers and employees under the Company's Executive Incentive Stock Ownership Plan and provided that, upon a change of control of Hall, all shares so granted would immediately vest; (3) it substantially increased the salaries and severance pay of Hall's top executives; and (4) it offered to pay an excessive price for Jartran, Inc., a company that competes with Ryder (the alleged purpose of such an expenditure is to attempt to block the proposed Ryder purchases of the Hall stock on antitrust grounds).

According to plaintiff, these actions amount to a waste of corporate assets and therefore he has requested that all the actions be rescinded; that the individual defendants be enjoined from causing Hall to acquire Jartran, Inc., or, if the acquisition is consummated, that the transaction be rescinded. Plaintiff also seeks damages from the individual defendants, the directors of Hall, for their role.

The defendants have denied all liability with respect to these challenged transactions and moved to dismiss this action on the ground that plaintiff's substantial investment in Ryder creates an incurable conflict of interest which necessarily precludes his being a proper representative of the stockholders on whose behalf the suit was brought.

Plaintiff is a Vice President of the brokerage firm of Janney Montgomery Scott, Inc. He has owned Ryder stock since 1965 and owns 26,000 shares of Ryder common stock valued at approximately $700,000.

Ryder is a leader in the truck leasing industry and has, it is alleged, generated greater tax benefits than it can utilize. Consequently, Ryder decided sometime during 1980 to investigate the possibility of acquiring a company outside the trucking business which would be able to utilize these accumulated tax benefits. On September 18, 1981 Ryder disclosed its interest in acquiring Hall by filing the notice required by the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a. At that time, Ryder's Notice indicated that it owned 4.9% of Hall and that it intended to purchase "in excess of 15%" of the outstanding shares.

While Ryder was in pursuit of a suitable acquisition, Hall and its management began an investigation of possible association with Jartran, Inc. ("Jartran"), a competitor of Ryder in the truck leasing industry. Although the timing of these respective pursuits is not exactly clear, it is clear that Hall was investigating Jartran after the filing of Ryder's Hart-Scott-Rodino notice and such investigation culminated in the acquisition of Jartran on December 31, 1981. Subsequently, on January 6, 1982 Hall filed suit in the U.S. District of Illinois seeking injunctive relief and damages against Ryder for violations of the Williams Act and the Clayton Act. This matter is now before that Court.

Defendants claim that plaintiff has conflicting interests in Ryder and Hall because in September, 1981 plaintiff bought a total of 5,800 shares of common stock of Hall. Additionally, plaintiff advised approximately 25–35 of his clients to purchase Hall stock. Plaintiff, together with his clients, purchased a total of 30,000 shares of Hall, worth approximately 1 million dollars. After that purchase plaintiff filed this lawsuit on October 21, 1981.

Defendants' position is that there is more to the above scenario than meets the eye. Defendants assert that Youngman, the plaintiff, is more than a passive investor in Ryder. More particularly, defendants claim that plaintiff is a knowledgeable investor and arbitrageur who closely monitors Ryder stock; has access to financial information by way of quarterly "update meetings" provided by Ryder to analysts and institutional investors; has access to certain inside information by way of his close relationship with top executives of Ryder; and has had communications with these top executives after the institution of this derivative suit.

Defendants therefore argue that plaintiff, in furtherance of his own personal and professional interest, began purchasing Hall stock immediately after the announcement of Ryder's intention to purchase in excess of 15% of Hall. Plaintiff, it is claimed, made his purchases over the weeks following the announcement, all in anticipation of the Ryder takeover.

Thus defendants contend that the facts demonstrate plaintiff's interest in promoting the takeover of Hall by Ryder through this litigation. Defendants therefore argue that plaintiff's ownership in both Hall and Ryder stock and his interest in promoting Ryder will prejudice his prosecution of this suit on behalf of all the stockholders of Hall. Defendants suggest that plaintiff's bias has already been revealed in his precipitous filing of this suit four weeks after his first purchase of Hall stock and on the day Hall announced its intent to acquire Jartran. Moreover, defendants state that the assertion of similar claims in the case of *Greenfield v. Tahmoush,* previously filed in this Court, virtually guarantees that the merits of plaintiff's complaint will receive an adequate forum. This is particularly so, say defendants, because the Greenfield complaint has recently been amended to encompass the allegations in this case.

In response to these claims, plaintiff insists that he bought the Hall stock because of its sound investment potential and because of its added speculative appeal because Ryder might make a tender offer. Specifically, plaintiff stated in his deposition:

"A. The stock relative to other companies in the industry was selling at a rela-

tively low multiple. I didn't think there was much risk in the stock. Where the stock falls to or rises to, no one can really answer.

I thought and still think it's a good investment. They raised the dividends subsequently after I bought it. My analysis was correct if only for that. If business is good, they are raising their dividend." (Deposition of Youngman, pp. 48–49)

"I made a choice to buy Hall because I felt the stock was reasonably priced with good prospects in the future, with the fundamentals of the business changing and with the added speculative appeal that Ryder could in fact at some point in time make an offer for the company. I still abide by that investment decision. Hall is a very well-managed company. The evidence is clear if you look at the ten-year record of this company." (Deposition of Youngman, p. 60)

Furthermore, plaintiff claims that one of his primary objectives in bringing this suit is to enable "any third party, be it Ryder, or anyone else" to acquire Hall.

Plaintiff's final response with respect to the other pending suits which assert substantially the same issues as in this case, is one of caution. Plaintiff maintains that these other actions do not necessarily ensure the vigorous prosecution or any prosecution of these alleged wrongs.

## II

■ While the only explicit standing requirement for maintaining a derivative suit is that the plaintiff be a stockholder of the corporation at the time of the transaction of which he complains, or that his stock thereafter devolves upon him by operation of law, this Court has recognized additional implicit requirements. 8 *Del.C.* § 327; Ch.Ct. Rule 23.1; *Katz v. Plant Industries, Inc.,* Del.Ch., C.A. # 6407–N.C. (October 27, 1981). Simply put, the plaintiff in a derivative action must be qualified to serve in a fiduciary capacity as a representative of a class, whose interest is dependent upon the representative's adequate and fair prosecu-

tion. *Katz v. Plant Industries, Inc.,* supra. Despite the lack of a specific requirement in Rule 23.1 as to the competency of a stockholder derivative plaintiff, the imposition of an adequacy of representation requirement for derivative suits is entirely consistent with that which is utilized in Rule 23 relating to class actions because the plaintiff in both types of suits acts as a fiduciary. The cases interpreting Rule 23, therefore, may be effectively used in analyzing the implied competency requirement under Rule 23.1.

The decisions in this area have interpreted the adequacy of representation requirement to mean that a Court can and should examine any extrinsic factors, that is, outside entanglements which make it likely that the interests of the other stockholders will be disregarded in the prosecution of the suit. To this end, this Court has outlined the factors, although not exclusive, to be given consideration in determining the adequacy and fairness requirement within the context of a derivative suit. In *Katz* Chancellor Marvel listed the following criteria with approval:

"Typically, the elements are intertwined or interrelated, and it is frequently a combination of factors which leads a court to conclude that the plaintiff does not fulfill the requirements of 23.1 (although often a strong showing of one way in which the plaintiff's interests are actually inimical to those he is supposed to represent fairly and adequately, will suffice in reaching such a conclusion). Among the elements which the courts have evaluated in considering whether the derivative plaintiff meets Rule 23.1's representation requirements are: economic antagonisms between representative and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiff and defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the

derivative action itself; plaintiff's vindictiveness toward the defendants and, finally, the degree of support plaintiff was receiving from the shareholders he purported to represent.

"A major 'type of antagonism requiring denial of certification is clear economic antagonism between representative and class.' *Schnorback v. Fuqua,* 70 F.R.D. 424, 433 (S.D.Ga.1975). See also *Roussel v. Tidelands Capital Corp.,* 438 F.Supp. 684, 688 (N.D.Ala.1977), ('Typically, these extrinsic factors involve competing business interests.') Many courts have confronted situations of economic antagonism, frequently involving competition between two entities in which the derivative plaintiff is involved."

*Katz, supra* 3–4

Although these elements have been frequently combined to provide the basis for a court's decision to dismiss, often a strong showing of one factor which is actually inimical to the class, will permit the same conclusion. A summary of cases relied upon by the parties illustrates the point.

In *Robinson v. Computer,* N.D.Ala, 75 F.R.D. 637 (1976), the Court dismissed a derivative action because plaintiff did not fairly and adequately represent the interest of the class. The Court found that Robinson was more than "a mere shareholder in another corporation". *Id.* 643. In fact, Robinson was the owner of a business that had been judicially determined to be in direct competition with the nominal defendant.

Similarly, in *DuPont v. Wyley,* D.Del., 61 F.R.D. 615 (1973), Judge Stapleton, in dismissing that action, stressed the many faceted relationship between the plaintiff and the defendant corporation. The criticized relationship included plaintiff's controlling interest in a competitor of the defendant corporation and the existence of a continuing battle involving plaintiff but unrelated to the class whom plaintiff was seeking to represent.

The derivative plaintiff in *Quirke v. St. Louis-San Francisco Railway Company,* 8th Cir., 277 F.2d 705 (1960), was a stockholder in two railroads, one of which, Frisco, purchased stock of the other, Central of Georgia. The plaintiff in that case filed an action against the purchaser, Frisco, because he believed and so admitted "that the purchase of Central of Georgia stock by the Frisco was advantageous to Frisco but the sale was detrimental to Central and its stockholders of whom he was one." *Id.* 708. The Court therefore determined that such adverse interest disqualified the plaintiff.

Finally, in *Nolen v. Shaw-Walker Co.,* 6th Cir., 449 F.2d 506 (1971), there was a strong showing and thereby a finding that the named plaintiff was not the driving force behind the litigation. Indeed, plaintiff was found to be no more than a front for a Mr. Findland, who was in actual control of the litigation and also served as a director of American Seating Co. and as an executive officer of Textron during the dispute. Moreover, it was shown that Mr. Findland's purpose in maintaining the action was to force Shaw Walker and his father's estate to accede to a merger between Shaw Walker and some other company listed on the New York Stock Exchange, preferably American Seating or Textron.

■ Nevertheless, courts have carved out an exception to the above general rule that a conflict of interest necessarily disqualifies a derivative or class action plaintiff from maintaining the suit. The fact that the plaintiff may have interests which go beyond the interests of the class, but are at least co-extensive with the class interest, will not defeat his serving as a representative of the class. Similarly, purely hypothetical, potential or remote conflicts of interests never disable the individual plaintiff. Wright & Miller, 7A, *Federal Practice and Procedure* § 1833 (1972).

In *Tyco Laboratories, Inc. v. Kimball,* E.D.Pa., 444 F.Supp. 292 (1977), it was held that the fact that plaintiffs had a substantial interest in the defendant corporation and had once been adversaries of the defendants in the action did not serve to

disqualify plaintiffs from representing the class. This conflict was viewed by the Court as merely potential and hypothetical. Likewise, in *Glahers, Inc. v. Jaroff*, S.D. N.Y., 266 F.Supp. 524 (1967), the plaintiff's potential conflict of interest was not deemed of sufficient strength to result in disqualification where the defendant asserted that plaintiff, a trader in securities, owned directly and indirectly stock interests in a business with which defendant was currently negotiating a contract arrangement.

## III

In the last analysis, the issue therefore becomes a question of who bears the burden of proof and how clear of a showing must be made with respect to the conflict of interest.

■ The teaching of the cases is that before a plaintiff can be found to be disqualified to maintain an action under Rule 23 or 23.1 a defendant must show that a serious conflict of interest exists, by virtue of one factor or a combination of factors, and that the plaintiff cannot be expected to act in the interests of others because doing so would harm his other interests. Wright & Miller, 7A, *supra* § 1833. The defendant, therefore, must show a substantial likelihood that the derivative action is not being used as a device for the benefit of all the stockholders. *Owen v. Modern Diversified Industries, Inc.*, 6th Cir., 643 F.2d 441 (1981).

■ Considering all the facts and circumstances which exist in this case, I cannot find that defendants have met their burden of demonstrating that a serious conflict actually exists. In the other cases discussed, the conflict of interest was not merely potential but immediate and obvious; the outside influences were not hypothetical but constituted a present threat to the conduct and the subject matter of the suit. In other words, the extrinsic facts were of sufficient strength to warrant dismissal under the Rule.

The situation of the plaintiff here is not like that of any of the derivative plaintiffs in the cases cited by defendants. The only disturbing factor is plaintiff's stockholder interest in Ryder. While plaintiff's interest in indeed substantial, it could hardly be considered a majority or controlling interest. I know of no case holding that a stockholder interest in another corporation, in the absence of control, is an entanglement that is per se antagonistic to the interests of other similarly situated stockholders. To work a disqualification there must be coupled with an investment interest an interest so strong, adverse and obvious that a plaintiff could not be expected to adequately and fairly prosecute a representative action. Compare, *DuPont v. Wyley*, supra.

The facts alleged by defendants sound like an action alleging security law violations; particularly violations involving misuse of insider information. The record, however, does not show any factual basis for the allegations. Defendants have attempted to illustrate a manipulative and a controlling force behind the named plaintiff. On the record, however, it is difficult to find any such driving force behind the litigation. The fact of plaintiff's stockholder interest in Ryder might have significance, if the record showed that plaintiff's sole motive in suing Hall were to aid his interest in Ryder. But on the record there is no such showing and I must find that the plaintiff, as he has testified, was motivated at least in part by his stockholder interest in Hall.

In any event, it takes more than mere hypothesis to disqualify a plaintiff. In this case, it is clear that the plaintiff shares with the other stockholders the common interest of seeking redress from the defendants for alleged breaches of fiduciary duties. Any recovery which results from this action will inure to the benefit of the corporation. Moreover, if one of plaintiff's primary purposes is to enable a third party, be it Ryder or another, to pay Hall stockholders an "enormous profit", such profit

will inure to the benefit of all the individual stockholders.

Though the plaintiff may well have in part a selfish motive in bringing this action, which is not unusual, he will be permitted to continue to act on behalf of all the stockholders of Hall. Defendants' motion to dismiss is therefore denied.

IT IS SO ORDERED.