**Edward C. FECHTER, et al.**

v.

**HMW INDUSTRIES, et al.**

**Civ. A. No. 87–506.**

United States District Court,
E.D. Pennsylvania.

Aug. 31, 1987.

James H. Thomas, Lancaster, Pa., for plaintiffs.

John Tryon, Lancaster, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This action arises from the termination of a pension plan known as the HMW, Inc. Cooperative Retirement Plan for Salaried Employees, as amended June 1, 1981 ("the Plan") and the subsequent distribution of the Plan's assets. Plaintiffs are former Plan participants. Defendants are Hamilton Technology Inc. ("HamTech"), plaintiffs' employer, HMW Industries ("HMW"), the parent company of HamTech, Clabir Corporation ("Clabir") who acquired HMW prior to the termination of the Plan, Gloria G. Strantz, an employee of General Defense Corporation who administered the Plan, Kenneth R. Bernhardt, the Chief Executive Officer of HamTech, and Henry D. Clarke, Jr., Clabir's Chief Executive Officer and largest shareholder.

On March 21, 1984, an application to terminate the Plan was filed with the Pension Benefit Guaranty Corporation (PBGC). Following approval by the PBGC, the Plan

---

**8.** *See In re Martin–Trigona,* 737 F.2d 1254, 1263   (2d Cir.1984).

was terminated in May, 1985. In August and September, 1985, HMW distributed $1,705,492 in excess assets to Plan participants; $7,925,756 reverted to HMW.

During the pendency of the application to terminate the Plan and after approval of termination by the PBGC, Richard Blakinger, a Plan participant, wrote a series of letters to Gloria Strantz, HMW executives and the PBGC challenging the distribution of the Plan's assets. Mr. Blakinger became a Plan participant by virtue of his employment from 1950 to 1971 as in-house counsel and later as president of the predecessor to HMW. Because of Mr. Blakinger's high level jobs, he was the recipient of one of the largest amounts of the excess assets distributed and he has one of the largest claims in this litigation. Mr. Blakinger is also the senior partner in the firm of Blakinger, Byler, Grove, Thomas & Chillas, P.C. ("the Blakinger firm"), which represents plaintiffs in this action.

In his letters, Mr. Blakinger presented detailed legal and mathematical analyses questioning the Plan's distribution. These letters were written on the Blakinger firm's stationery and were signed by "Blakinger, Grove & Chillas, P.C." and by "Richard J. Blakinger". In a letter dated June 7, 1985, Mr. Blakinger wrote that Edward Fechter, a plaintiff in this action, had discussed these matters with him and Mr. Blakinger sent copies of some of his letters to Mr. Fechter.

On January 28, 1987, plaintiffs, represented by the Blakinger firm, commenced this action. Plaintiffs allege that the Plan's assets were unfairly distributed and that defendants breached fiduciary duties owed to plaintiffs. They assert various claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et. seq. Pending are plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23(b)(3) and defendants' motion to disqualify plaintiffs' counsel from participation in this action. For the reasons stated below, I deny both motions without prejudice.

## I. MOTION FOR CLASS CERTIFICATION

Fed.R.Civ.P. 23 sets forth the threshold requirements for the maintenance of a class action. Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately represent the class.

Because I find that Rule 23(a)(4) is not satisfied, I must deny the motion for class certification.

"Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). It is defendants' burden to establish the inadequacy of representation. *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); *Shamberg v. Ahlstrom*, 111 F.R.D. 689, 693 (D.N.J.1986).

It appears that the named plaintiffs are similarly situated to the rest of the class and there is nothing which suggests that they will be inadequate representatives. Defendants argue, however, that plaintiffs fail to satisfy Rule 23(a)(4) because the continued participation of plaintiffs' counsel violates the Code of Professional Responsibility ("the Code") since Richard Blakinger is a member of the proposed class and was active in raising the issues to be resolved in this litigation. Def. ex. A–C.

The requirement that class representatives fairly and adequately represent the class extends to class counsel as well as to class representatives. *In re Fine Paper Antitrust Litigation*, 617 F.2d 22, 27 (3d Cir.1980). If counsel should be disqualified

because of a conflict of interest, then counsel is an inadequate representative of the class' interest. *Id.*

Defendants assert that the Blakinger firm must be disqualified according to *Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3d Cir.), *cert. denied sub. nom.*, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976). In *Kramer*, the Third Circuit considered whether plaintiff class' counsel Kapustin had to be disqualified because counsel was a law partner of Kramer, the class representative. The court held that disqualification was required, not because of any actual wrongful conduct, but because counsel's representation violated Canon 9 of the Code, which states: "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." The court recognized that "a class action is a special type of legal proceeding" and stated that its "inquiry becomes necessary only because an attorneys' fee may emanate from an equitable fund, creating a possible conflict between the interests of the plaintiff class members represented by Kramer and the interest of Kramer's partner Kapustin in maximizing his award as attorney for the class." *Id.* at 1091 (footnote omitted). The court then set forth the following rule:

> [N]o member of the bar either maintaining an employment relationship, including a partnership or professional corporation, or sharing office or suite space with an attorney class representative during the preparation or pendency of a 23(b)(3) class action may serve as counsel to the class if the action might result in the creation of a fund from which an attorneys' fee award would be appropriate.

*Id.* at 1093.

█ It is true, as plaintiffs argue, that the issue presented in this case is one step removed from the issue resolved in *Kramer*. In *Kramer*, the court was concerned with the appearance of impropriety that arose because of the relationship between class counsel and a class representative; this case presents the question of whether an appearance of impropriety arises because of the relationship between counsel and a potential class member. However,

the facts of this case require application of the *Kramer* rule. Although Mr. Blakinger is not a class representative, it appears that he was instrumental in initiating this litigation. Because of his interest in and knowledge of the issues involved in this case, Mr. Blakinger appears to be an influential class member and appears to have already demonstrated his influence by arranging for his own firm to represent plaintiffs. Moreover, because of his demonstrated interest in the case and because his claim is a substantial one, it appears that Mr. Blakinger will work closely with James Thomas, the lawyer from the Blakinger firm representing plaintiffs, and remain active in this litigation. In sum, even though Mr. Blakinger is not a named plaintiff, it appears that he is a *de facto* class representative and that he would be a named plaintiff and thus potentially a class representative were it not for a conflict of interest arising under *Kramer*. Thus, because it appears that Mr. Blakinger will directly benefit from any counsel fees as a result of this litigation, the same appearance of impropriety recognized in *Kramer* is created by the Blakinger firm's representation in this case.

Plaintiffs argue that any appearance of impropriety is removed by the power of this court to award attorneys fees from the defendants in lieu of a recovery from a common fund created for the benefit of the class. I do not agree. In *Kramer*, the court held that the appearance of impropriety was not dissipated by Kramer's representation that he would forgo sharing in attorneys' fees; similarly, whether or not Mr. Blakinger ultimately benefits from fees through an equitable settlement fund does not dispel the appearance of impropriety since it appears that Mr. Blakinger may do so.

Plaintiffs also argue that this court's ability to supervise the settlement process ensures that the class' interests will be protected. This argument is beside the point. The issue is not whether the Blakinger firm will *actually* be an effective representative for the class, but whether an *appearance* of impropriety exists if the Blakinger firm is permitted to serve as

class counsel. For the same reason, the fact that Mr. Blakinger may have pursued the issues in this litigation only at Mr. Fechter's urging and may have accepted this case only after his firm merged because he did not handle litigation (see Pl. ex. A ¶¶ 5–6) is not relevant since it is the *appearance*, not the fact of impropriety, which is prohibited by Canon 9.

I have a reluctance to disqualify counsel. However, given the nature of class action litigation, it is essential that this court ensures that all the requirements of Rule 23 are met. Because "the appearance of conduct associated with institutions of the law [is] as important as the conduct itself," *Kramer*, 534 F.2d at 1088, I conclude that the Blakinger firm's representation of plaintiffs creates an appearance of impropriety.

With regard to the other requirements for a 23(b)(3) class action, it appears that these requirements are satisfied. Because plaintiffs must refile their motion, however, I shall allow defendants to raise any objections to class certification at that time.

█ Defendants also argue that discovery is necessary to determine how much each representative seeks to gain from this litigation, how much they have already received from the Plan and their role in opposing the Plan. Defendants argue that these issues are relevant to determining whether the named plaintiffs will serve as adequate representatives pursuant to 23(a)(4) and whether the claims of the named plaintiffs are typical of those of the rest of the class under Rule 23(a)(3). I do not agree. The purpose of this requirement of typicality is to ensure that the litigation posture of the class representatives is sufficiently co-extensive with the rest of the class so that the causes of action of all class members will be fully, fairly and vigorously prosecuted. *Sley v. Jamaica Water & Utilities, Inc.*, 77 F.R.D. 391, 394 (E.D.Pa.1977). The requirement is met if the representatives' claims arise from the same set of facts and are based on the same legal theory as the claims of the rest of the class. *Am/Comm. Sys. Inc. v. American Tel. & Tel. Co.*, 101 F.R.D. 317, 321 (E.D.Pa.1984). The degree of harm suffered by class representatives may vary from that suffered by other members of the class so long as the harm is of the same type. *McQuilken v. A & R Devel. Corp.*, 576 F.Supp. 1023, 1929 (E.D. Pa.1983). Rule 23(a)(3) is satisfied as long as there is no express conflict between the claims of the potential representatives and those of the rest of the class. *Fisher Bros. v. Mueller Brass Co.*, 102 F.R.D. 570, 575 (E.D.Pa.1984); *Caruso v. Celsius Insulation Resources, Inc.*, 101 F.R.D. 530, 534 (M.D.Pa.1984).

In this case the legal theories of the claims of the named plaintiffs are the same as those of the rest of the potential class and there is no reason why the amount of the claim will create a conflict of interests between the claims of the representatives and those of the class. The fact that the named plaintiffs have been more involved in this litigation is only to be expected, and again, that has no relevance to the issue of whether a named plaintiff has a conflict of interest with the rest of the class or will be an adequate representative.

In conclusion, I deny plaintiffs' motion for class certification because Rule 23(a)(4) has not been satisfied. If plaintiffs desire to proceed as a class, they may obtain new counsel within 30 days and refile this motion.

## II. DISQUALIFICATION OF COUNSEL

Defendants move to disqualify the Blakinger firm as counsel for the reasons I have discussed in the context of the motion for class certification. Despite my comments in Part II, *supra*, I decline to grant defendants' motion at this time since defendants' motion for disqualification may be moot in the event that the class is ultimately not certified. If necessary, this motion may be renewed when plaintiffs refile their motion for class certification.