**EMERALD PARTNERS, a New Jersey limited partnership, Plaintiff,**

v.

**Ronald P. BERLIN, David L. Florence, Craig Hall, Rex A. Sebastian, Theodore H. Strauss, and May Petroleum, Inc., a corporation of the State of Delaware, Defendants.**

**Civ. A. No. 9700.**

Court of Chancery of Delaware, New Castle County.

Submitted: Feb. 16, 1989.
Decided: June 30, 1989.

HARTNETT, Vice-Chancellor.

Defendants moved to disqualify the plaintiff, Emerald Partners, a New Jersey limited partnership, ("Emerald") from serving as the class plaintiff in this purported stockholder derivative and class action on the grounds that a fatal conflict of interest exists between Emerald and the class which consists of the other minority shareholders of defendant May Petroleum, Inc. ("May"). The defendants further seek the disqualification of Emerald's counsel, Kech Mahin Cate & Koether ("the Koether firm"), on the grounds that a lawyer may not act as class counsel in a case where his legal associate, the general partner of Emerald, is in reality acting as the class representative.

Defendants' motion to disqualify Emerald Partners as class representative must be denied because defendants have failed to show that Emerald will be an inadequate representative of the class. Defendants' motion to disqualify the Koether firm as counsel for the class in the stockholder derivative portion of the suit, however, must be granted because of the conflict of interest arising because the General Partner of Emerald is a named partner in the Koether firm.

Gregory V. Varallo, Richards, Layton & Finger, Wilmington (Robert J. Schechter, Koether Harris & Hoffman, of counsel), New York City, for plaintiff.

Vernon R. Proctor, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendants May Petroleum, Inc., David L. Florence, Rex A. Sebastian and Theodore H. Strauss.

Donald J. Wolfe, Jr., and William J. Marsden, Jr., Potter Anderson & Corroon, Wilmington, for defendants Craig Hall and Ronald P. Berlin.

## THE FACTS

### I

Emerald brought this action against May Petroleum, Inc., a Delaware corporation, and its directors. The action was originally brought individually, but subsequently Emerald amended its complaint to allege class and stockholder derivative claims. As of the time of its filing, defendant Craig Hall was May's President, Chief Executive Officer, and the Chairman of its Board.

At the time of filing suit Emerald was a minority shareholder of May and owned approximately 2.2% of its outstanding common stock. Emerald was formed and is

controlled by Paul Koether, an investment advisor with Ingalls & Snyder, and his wife, Natalie Koether, Esquire, a name partner with plaintiff's counsel, Keck Mahin Cate & Koether, apparently as a vehicle to participate in and profit from certain so-called "greenmail" transactions. Mrs. Koether is its sole general partner. "Greenmail" has been defined as "the accumulation of a significant amount of stock by a shareholder, or group of shareholders acting in concert, for the purpose of intimidating a board of directors into causing the corporation to repurchase such shares at a substantial premium over their realistic market price." *Good v. Texaco, Inc.*, Del. Ch., C.A. No. 7501, Brown, C., slip op. at 21, 1985 WL 11536 (Feb. 19, 1985). In *Berlin v. Emerald Partners*, Del.Supr., 552 A.2d 482 (1989), the Delaware Supreme Court recognized that the Koethers have actively participated in various "greenmail" transactions in the past and it is undisputed that, prior to the institution of this suit, the Koethers attempted to sell Emerald's holdings to Craig Hall at a premium of from 90% to 124%—based on then-current market prices. Mr. Hall, however, resisted their overtures at that time.

Emerald initially filed this action to enjoin the consummation of a proposed merger between May and thirteen corporations controlled by Mr. Hall claiming, *inter alia,* that the merger would violate Article Fourteenth of May's Certificate of Incorporation which required a 66⅔% supermajority vote to approve a merger, and that the February 15, 1988 Proxy Statement sent to May's shareholders was misleading and omitted certain material information. On March 18, 1988, I preliminarily enjoined consummation of the merger because I found it to be reasonably probable that the supermajority vote provisions of Article Fourteenth had been violated. *Emerald Partners v. Berlin*, Del.Ch., C.A. No. 9700, Hartnett, V.C., 1988 WL 25269 (March 19, 1988). I did not address the disclosure claims, however, at that time.

On Interlocutory Appeal the Delaware Supreme Court reversed my decision and vacated the preliminary injunction and found that Article Fourteenth had not been violated. The case was then remanded back to this Court by Order dated August 15, 1988. *Berlin v. Emerald Partners*, Del.Supr., supra. Within hours of the Supreme Court's August 15th decision, the proposed merger was consummated.

On March 9th, just one week prior to the March 16th preliminary injunction hearing, the defendants moved to disqualify Emerald's New York–New Jersey counsel—at that time known as Koether Harris & Hoffman—on the basis that Natalie Koether, the sole general partner of Emerald, was also a partner in the law firm. Defendants claimed that she could not lawfully serve both as the general partner of the class representative and as counsel for the class citing *Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3d Cir.1976), *cert. denied sub nom., Arthur Anderson & Co. v. Kramer*, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976). On March 11th I denied defendants' motion because it was premature and, in any case, would likely cause prejudice to the plaintiff class if it was granted on the eve of the preliminary injunction hearing. Defendants' motion, however, was denied, "without prejudice to being reconsidered at a more propitious time." *Emerald Partners v. May Petroleum, Inc.*, Del.Ch., C.A. No. 9700, Hartnett, V.C., letter op. at 2. (March 14, 1988).

The defendants have now renewed their motion to disqualify plaintiff's counsel, claiming that the disqualification question is now ripe because: (1) Emerald is also prosecuting the action as a purported stockholders derivative action and, therefore, there is no pending issue as to certification of a class to delay the ruling; (2) the timing of a motion for class certification is largely within plaintiff's control and a motion has not yet been filed although dis-

covery on the merits of the case is proceeding; (3) a motion for class certification should be made only by qualified counsel; and (4) discovery should only be made by qualified counsel. In the defendants' estimation, "a more propitious time" is now at hand.

In addition, the defendants have moved to disqualify Emerald as the derivative plaintiff in this action. They assert, *inter alia*, that Emerald is not qualified to serve in a representative capacity because its interests in the litigation are fatally antagonistic to those of the other May shareholders.

## THE QUALIFICATION OF THE DERIVATIVE PLAINTIFF

### II

█ A plaintiff in a stockholder derivative action must be qualified to serve in a fiduciary capacity as a representative of the class of stockholders, whose interest is dependent upon the representative's adequate and fair prosecution of the action. *Youngman v. Tahmoush*, Del.Ch., 457 A.2d 376 (1983). Although Chancery Rule 23.1 contains no specific requirements as to the competency of a stockholder derivative plaintiff, the analogous adequacy of representation requirement of Chancery Rule 23, which relates to class actions, is applied. *Youngman v. Tahmoush*, supra; *Davis v. Comed., Inc.*, 619 F.2d 588 (6th Cir.1980), *reh. denied*, 623 F.2d 28 (6th Cir.1980). Rule 23.1 "is intended to make explicit that adequacy of representation is a requirement of derivative as well as class actions." *Robinson v. Computer Servicenters, Inc.*, 75 F.R.D. 637, 641 (N.D.Ala.1976). In both instances the plaintiff assumes the role of a fiduciary for the benefit of the corporation's shareholders. *Youngman v. Tahmoush*, supra; *Davis v. Comed., Inc.*, supra.

Rule 23.1 has been interpreted as requiring that a court consider any extrinsic factors which might indicate that a repre-

sentative might disregard the interests of the other members of the class. *Davis v. Comed., Inc.*, supra; *Blum v. Morgan Guaranty Trust Co. of New York*, 539 F.2d 1388 (5th Cir.1976).

In *Youngman v. Tahmoush*, supra, at 379–80, I reviewed the factors relevant to a determination whether a derivative plaintiff fairly and adequately represents the interests of the class by quoting *Davis v. Comed., Inc.*, supra, 619 F.2d at 593–95:

> "Among the elements which the courts have evaluated in considering whether the derivative plaintiff meets Rule 23.1's representation requirements are, economic antagonisms between representative and class; the remedy sought by the plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiff and defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendants and, finally, the degree of support plaintiff was receiving from the shareholders he purported to represent."

> \*　\*　\*　\*　\*　\*

> "Typically, the elements are intertwined or interrelated, and it is frequently a combination of factors which leads a court to conclude that the plaintiff does not fulfill the requirements of 23.1 (although often a strong showing of one way in which the plaintiff's interests are actually inimical to those he is supposed to represent fairly and adequately, will suffice in reaching such a conclusion)."

The determination of whether a derivative plaintiff will adequately represent the interests of the other class members, therefore, involves a multidimensional examination, although a strong showing of one factor, depending upon the circumstances,

may be sufficient in itself to disqualify a plaintiff who desires to represent a class.

A stockholder derivative claim may be maintained although it does not have the support of a majority of the corporation's shareholders or even the support of all the minority stockholders. *Nolen v. Shaw-Walker Company,* 449 F.2d 506, 508, n. 4 (6th Cir.1971); 7C WRIGHT, MILLER & KANE, *Federal Practice and Procedure: Civil* § 1833 (1986 & 1988 Supp.). The true measure of adequacy of representation, therefore, is not how many shareholders the derivative plaintiff represents, but rather, how well he advances the interests of the other similarly situated shareholders. *Schupack v. Covelli,* 512 F.Supp. 1310 (W.D.Pa.1981). See also *Halstead Video, Inc. v. Guttillo,* 115 F.R.D. 177 (N.D.Ill. 1987).

A plaintiff in a stockholder derivative suit will not be disqualified simply because he may have interests which go beyond the interests of the class and, as long as the plaintiff's interests are coextensive with the class, his representation of the class will not be proscribed. *Recchion, Westinghouse Electric Corp. v. Kirby,* 637 F.Supp. 1309 (W.D.Pa.1986). Likewise, purely hypothetical, potential or remote conflicts of interest will not disqualify a derivative plaintiff. *Youngman v. Tahmoush,* supra; *Vanderbilt v. Geo-Energy Ltd.,* 725 F.2d 204 (3d Cir.1983); 7C WRIGHT, MILLER & KANE, supra.

A defendant has the burden of proof in a motion to disqualify a derivative plaintiff and he must show that a serious conflict exists, by virtue of one factor or a combination of factors, and that the plaintiff cannot be expected to act in the interests of the others because doing so would harm his other interests. *Youngman v. Tahmoush,* supra; *Lewis v. Curtis,* 671 F.2d 779 (3d Cir.1982), *cert. denied, Curtis v. Lewis,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); *Smallwood v. Pearl Brewing Co.,* 489 F.2d 579 (5th Cir.1974), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); 7C WRIGHT, MILLER & KANE, supra. In effect, the defendant must show a substantial likelihood that the derivative

action is not being maintained for the benefit of the shareholders. *Youngman v. Tahmoush,* supra; *Owen v. Modern Diversified Indus., Inc.,* 643 F.2d 441 (6th Cir. 1981).

### III

The defendants argue that it is impossible for Emerald to fairly and adequately represent the interests of May's other shareholders because there is an extreme antagonism of interests between the representative and the class. They assert that Emerald's conduct and interests fail to measure up to almost every factor set forth in *Youngman,* and that the immediate disqualification of Emerald as derivative plaintiff is warranted. I disagree.

Defendants' arguments in favor of the disqualifications will be discussed seriatim and it should be noted that because both motions were briefed prior to the consummation of the May/Hall merger, certain of defendants' arguments are now moot.

### IV

The defendants' first claim that "severe economic antagonisms" mandate Emerald's disqualification. They contend that because Emerald and the Koethers have engaged in "greenmail" in the past and have demonstrated a short-term investment perspective, they are necessarily incapable of representing the long-term interests of May's other shareholders in this litigation.

If the Koethers were in a position to personally profit from this purported derivative action to the detriment of the other shareholders, defendants' argument would likely be dispositive. The merger has been consummated however and, even if the plaintiff were to prevail on all the claims, an unraveling of the transaction would be practically impossible. See *Weinberger v. UOP, Inc.,* Del.Supr., 457 A.2d 701 (1983). Emerald is therefore not now in a position to obtain any "greenmail".

Emerald further asserts that it no longer seeks to "make a quick buck" from this situation. In support of this contention, Emerald has presented evidence that it rejected offers of "greenmail" payments

from Craig Hall just prior to the injunction hearing on March 18, 1988. I am not persuaded, therefore, that Emerald is maintaining this suit solely in its own interest, or that it will be unable to fairly and adequately represent the interests of May's other shareholders. A representative plaintiff who is willing to fully accept the fiduciary duties of a class plaintiff should not be automatically disqualified simply because at some point in the past it sought "greenmail". See *Vanderbilt v. Geo–Energy Ltd.*, supra. This is especially true where, as here, the disqualification of Emerald would likely end the litigation, thus leaving the other members of the class without a remedy.

Additionally, under Chancery Rule 23.1, no compromise or settlement of a derivative claim, or, for that matter, withdrawal of a representative plaintiff, may be made without the express approval of this Court. See *MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc.*, Del.Ch., C.A. No. 8126, Walsh, J., 1985 WL 21129 (Oct. 9, 1985). This provision is specifically intended to guard against surreptitious buy-outs of representative plaintiffs. *Wied v. Valhi*, Del.Supr., 466 A.2d 9 (1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984).

In sum, I do not find that an extreme economic antagonism now exists between Emerald and the other May shareholders. At this stage, it seems that the only relief realistically possible will be money damages and, therefore, all the shareholders will be in a position to participate equally in any spoils of battle. Nor has there been any showing that Emerald now has any motive in the prosecution of this suit other than to obtain relief for the minority shareholders who dissent from the actions taken by May's Board.

## V

Second, defendants contend that the relief sought by Emerald is contrary to the wishes of the other shareholders because they voted overwhelmingly in favor of the merger. This argument is likewise unpersuasive as it is well-settled that a derivative action may be brought even if the representative does not have the support of a majority of the corporation's shareholders, or even all of the minority shareholders. *Nolen v. Shaw–Walker Co.*, supra; WRIGHT, MILLER & KANE, supra. See also *Schupack v. Covelli*, supra; *Halstead Video, Inc. v. Gutillo*, supra. A contrary rule of law would emasculate one of the underlying purposes of stockholder derivative actions which is to rectify instances of corporate misdeeds. See *Harff v. Kerkorian*, Del.Ch., 324 A.2d 215 (1974), *modified*, Del.Supr., 347 A.2d 133 (1975).

## VI

Third, the defendants claim that Emerald must be disqualified as derivative plaintiff because the Koethers, not Emerald, are the true driving forces behind the litigation. *Nolen v. Shaw–Walker Co.*, supra. The essence of this claim is that the Koethers are using Emerald as a means to enrich themselves, their "greenmail affiliates" and other clients at the expense of, or exclusion of, May's other stockholders.

I again reject defendants' argument because they have not demonstrated how the Koethers or their affiliates will be able to individually profit from this litigation to the detriment of the other class members or how the Koethers' individual interests currently diverge from those of the other class members. Compare *Nolen v. Shaw–Walker Co.*, supra, (plaintiff disqualified where the real driving force behind the derivative litigation was a business competitor of the defendant corporation who attempted to use the litigation as leverage to force the defendant to merge with an entity in which he had an interest).

## VII

Fourth, as another indication of Emerald's unsuitability to serve as derivative plaintiff, defendants point to the selfish act of Emerald in having sought to extract "greenmail" *vis-a-vis* Emerald's relatively small equity position in May. Emerald owned approximately 2.2% of May's outstanding stock prior to the merger. Again, I find that this argument is not persuasive

because the possibility of "greenmail" now appears remote and there is no indication that Emerald is not pursuing this suit in a *bona fide* manner on behalf of all shareholders.

### VIII

Fifth, defendants claim that Emerald's "extreme vindictiveness" demonstrates its inability to adequately represent the interests of the other May shareholders. In rejecting this assertion as a valid ground for disqualification, I refer to the observation made by District Judge Bechtie in *Vanderbilt v. Geo–Energy Ltd.*, supra, at 1001:

> "Inadequacy as a class representative is not made out merely because of a discordant relation between plaintiff and defendants. To the contrary, this may inspire plaintiff to be an even more forceful advocate. That plaintiff may have amorphous hostile feelings against defendants is not in itself relevant to the court given the absence of any concrete fact which reveals a conflict of interest between plaintiff and the class sufficient to make his representation inadequate, *see* 1 H. Newberg, *Class Actions* Sec. 1120f (1977)."

### IX

Finally, the defendants point to the fact that the plaintiff has received minimal support, if any, from May's other shareholders and this lack of support further indicates Emerald's unsuitability to serve a derivative plaintiff or to bring a derivative suit at all. In response, Emerald has submitted the deposition testimony of an independent May shareholder, James D. Williams, who voiced his opposition to the merger and stated that other shareholders he has been in contact with have indicated their opposition to the Hall/May merger.

### X

In summary, on the record before me, I find that defendants have not borne their burden of showing that there exists a sufficient threat of a potential conflict of interest which will prohibit Emerald from acting in the interest of May's other shareholders. *Youngman v. Tahmoush,* supra; *Smallwood v. Pearl Brewing Co.,* supra; *Ohio-Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21 (D.Ill.1980). There is no meaningful evidence indicating that Emerald's business interests would be harmed if it properly carries on this litigation on behalf of the class or that Emerald could receive any benefit at the expense of the class. In short, the defendants have not shown that there is an economic conflict of interest between the representative plaintiff and the rest of the minority shareholders who object to the merger. I therefore must deny defendants' motion to disqualify Emerald as derivative plaintiff.

### THE DISQUALIFICATION OF COUNSEL

### XI

■ The requirement that a class representative fairly and adequately represent the class extends to class counsel as well as class representatives. *In re Fine Paper Antitrust Litigation,* 617 F.2d 22 (3d Cir. 1980); *Fechter v. HMW Indus.,* 117 F.R.D. 362 (E.D.Pa.1987). If an attorney should be disqualified because of a conflict of interest, then he is an inadequate representative of the class' interest. *Id.*

A number of courts have adopted a *per se* rule of disqualification where an attorney seeks to serve both as class counsel and as plaintiff in a class or stockholder derivative action. For example, in *Kramer v. Scientific Control Corp.,* 534 F.2d 1085 (3d Cir.1976), *cert. denied sub nom., Arthur Andersen & Co. v. Kramer,* 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1975) ("*Kramer*"), the Third Circuit held that where an equitable fund may be created, the same person cannot serve as a plaintiff class representative and also serve in the role as class counsel because such a relationship creates an appearance of impropriety which was proscribed by the now superseded Canon 9 of the American Bar Association *Code of Professional Responsibility.* See also *Zylstra v. Safeway Stores, Inc.,* 578 F.2d 102 (5th Cir.1978);

*Turoff v. May Co.*, 531 F.2d 1357 (6th Cir.1976); *Fuller v. Walgreen Drug Co.*, 27 F.R.Serv.2d (Callaghan) 1003, 1979 WL 238 (S.D.Tex.1979).

The *Kramer* rationale has been expanded to disqualify a law firm even where a member of the firm was not the actual class representative. See *Fechter v. HMW Indus.*, supra, (firm disqualified where attorney, although not the named representative, was the *de facto* class representative and real driving force behind litigation); *Hedges Enterprises, Inc. v. Continental Group, Inc.*, 81 F.R.D. 461 (E.D.Pa.1979) (firm disqualified where attorney was a shareholder of corporate class representative).

The *Code of Professional Responsibility* and specifically Canon 9, upon which *Kramer* and its progeny were based, however, is no longer the law of Delaware. On October 1, 1985, *The Delaware Lawyers' Rules of Professional Conduct* superseded the *Delaware Lawyers' Code of Professional Responsibility.*

Other courts have declined to adopt the *per se* approach of Kramer and, instead, have followed a more fact specific and discretionary analysis as to attorney disqualification. See, *Susman v. Lincoln American Corp.*, 561 F.2d 86 (7th Cir.1977), *cert. denied, Lincoln American Corp. v. Susman*, 445 U.S. 942, 100 S.Ct. 1336, 63 L.Ed.2d 775 (1980). These decisions nevertheless recognize that the dual role of being class representative and also attorney for the class may impair the ability of the representative to adequately protect the interests of the class. See *Brick v. CPC Intern., Inc.*, 547 F.2d 185 (2d Cir.1976); *In re Cadillac V8–6–4 Class Action*, 93 N.J. 412, 461 A.2d 736 (1983).

Where a person serving as both lawyer and representative for the class stands to recover attorneys fees from a class fund created by the litigation, even the cases rejecting *per se* disqualification have generally held that it would be inappropriate for the lawyer to serve in a dual capacity because of the inherent conflict of interest presented. See *Susman v. Lincoln American Corp.*, supra; *Graybeal v. American*

*Savings & Loan Assn.*, 59 F.R.D. 7 (D.D.C. 1973); *In re Cadillac V8–6–4 Class Action*, supra; Annotation, *Propriety of Attorney Acting as Both Counsel and Class Member or Representative*, 37 A.L.R.4th 751, 4(a) (1985 & 1988 Supp.). However, one court has at least implicitly held that the potential for a substantial fee recovery alone is not sufficient to disqualify an attorney serving as class plaintiff. *Clark v. Cameron–Brown Co.*, 72 F.R.D. 48 (M.D. N.C.1976). See also *Lamb v. United Security Life Co.*, 59 F.R.D. 25 (S.D.Iowa 1972).

Where the class counsel's compensation will be derived from a source other than a fund created for the benefit of the class, courts are less likely to require disqualification. See *Phillips v. Joint Legislative Committee on Performance & Expenditure Review*, 637 F.2d 1014 (5th Cir.1981), *cert. denied sub. nom. Joint Leg. Comm. v. Phillips*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982) (attorneys' fees would come directly from defendant and not from any fund created for class relief); *Lorber v. Beebe*, 407 F.Supp. 279 (S.D.N.Y.1975) (class counsel agreed contractually not to participate in any legal fees awarded in class action).

Beyond the problems associated with class counsel's recovery of attorneys' fees, another conflict arises if the class counsel will likely be called to testify as a witness at trial. See Rule 3.7 of the *Delaware Rules of Professional Conduct.* This likelihood, however, must generally be more than a mere possibility. See, e.g., *Susman v. Lincoln American Corp.*, supra; *Clark v. Cameron–Brown*, supra; Note, *Class Action Counsel as Named Plaintiff: Double Trouble*, 56 Fordham L.Rev. 111, 123–24 (1987), and it appears that courts will not mandate disqualification unless the attorney's testimony relates to material facts, or to facts that could not be elicited from other witnesses. See *Delaware Rules of Professional Conduct* Rule 3.7; *United States v. Troutman*, 814 F.2d 1428 (10th Cir.1987); *Clark v. Cameron–Brown*, supra; *Comden v. Superior Court*, 20 Cal.3d 906, 145 Cal.Rptr. 9, 576 P.2d 971

(1978), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 652 (1978); Note, supra, at 124.

## XII

While the post-injunctive, post-merger state of this litigation supports the adequacy of Emerald to serve as class and derivative representative, it presents serious problems to the Koether firm's ability to serve as counsel for the class.

Defendants' motion to disqualify the Koether firm is no longer premature. In denying defendants' original motion to disqualify, I noted the extreme prejudice that would result to the putative class if counsel were to be disqualified on the eve of the preliminary injunction hearing. *Emerald Partners v. Berlin,* Del.Ch., supra, at 2. I also recognized that, in the context of a class action, a trial court ordinarily ought not to rule on a motion to disqualify counsel prior to the determination whether a class should be certified. *Id.* at 1–2 (citing *Zylstra v. Safeway Stores, Inc.,* supra). However, over a year has now passed since my denial of defendants' original motion and there is no indication that plaintiff will seek certification of the class in the immediate future. Considering that an analysis of the plaintiff/counsel relationship would appear to be a logical prerequisite to class certification (see *Fechter v. HMW Indus.,* supra) there seems to be no reason why this issue should not be resolved at this time. Moreover, the plaintiff also brings this action as a purported stockholder derivative action under Chancery Rule 23.1 which, although requiring the same standards of fair and adequate representation by the class representative and class counsel as under Rule 23, does not require class certification. I therefore find that the issue of the Koether firm's suitability to serve as class and derivative counsel is now ripe for determination.

## XIII

While I acknowledge Emerald's claim that Natalie Koether and Emerald are legally separate and distinct entities, such a legal distinction will not *ipso facto* defeat defendants' motion to disqualify plaintiff's counsel. Courts have disqualified counsel in a number of situations where a strict identity of interest between the class representative and the class attorney was lacking. See *Zylstra v. Safeway Stores, Inc.,* supra (law firm disqualified where husband of named plaintiff was partner in law firm representing the class); *Susman v. Lincoln Amer. Corp.,* supra (legal counsel was brother of named plaintiff); *Fischer v. International Tel. & Tel. Corp.,* 72 F.R.D. 170 (E.D.N.Y.1976) (counsel was father of named plaintiff); *Hedges Enterprises, Inc. v. Continental Group,* supra (law firm disqualified where lawyer was shareholder of named plaintiff).

The present case is closely analogous to *Hedges Enterprises, Inc. v. Continental Group, Inc.,* supra. In *Hedges,* the Court disqualified a law firm as class counsel where one of its attorneys, serving the firm in an "of counsel" capacity, was a one-seventh shareholder in the corporation named as class representative. The Court described the potential conflict:

> "More specifically, Donald Hedges stands to benefit from this suit in two ways. First, as a shareholder of the class representative, Donald Hedges would presumably benefit from any damages received by Hedges [the corporation] as a result of this action. Second, because the amount of the payments received by Donald Hedges from Wolf–Block are partially dependent upon the amount of money Wolf–Block receives from former clients of Donald Hedges, and because Hedges [the corporation] was a former client of Donald Hedges, any attorneys' fees received by Wolf–Block would presumably also inure to the benefit of Donald Hedges. Accordingly, although the relationship presently before us is distinguishable from that presented in *Kramer,* we hold that, because the relationship creates the appearance of impropriety, Wolf–Block may not serve as counsel to Hedges in its capacity as class representative or to the class, although it may continue to represent Hedges on an individual basis."

*Hedges,* 81 F.R.D. at 471.

An even greater financial conflict of interest exists in the present case. Natalie

Koether is the sole general partner of Emerald, the limited partnership serving as the class representative and she is also an active partner in the firm serving as class counsel, Kech Mahin Cate & Koether.

Although *Kramer's per se* rule mandating counsel disqualification may not now be controlling inasmuch as it was based on the now superseded Canon 9 of the *Code of Professional Responsibility*, the same policy concerns expressed in it are present here.

The representative plaintiff is in the sole managerial control of an attorney, who is a partner in the law firm currently serving as class counsel. It seems likely that the relief, if any, will be money damages and, if so, the attorneys' fees will be paid from a fund created through the efforts of the class representative and counsel. It is therefore clear that the potential for a serious financial conflict of interest currently exists.

Emerald contends, however, that there can be no actual financial conflict because the Koether firm is entitled to legal fees from Emerald whether or not the Court ever approves a fee application. The short answer to this argument is that the law firm might seek far more in fees from any fund created for the class than would ever actually be paid by Emerald to the firm. Also, notwithstanding her affidavit to the contrary, Section 1.04 of the Emerald Partners Limited Partnership Agreement provides that Natalie Koether is ultimately responsible for all the debts of Emerald, including, presumably, legal fees. Therefore, I find not only a conflict arising from the possible excessive generosity of the class representative in agreeing to attorney fees, but I also find a possibility exists that the class representative might be inclined to agree to a settlement which shifts Ms. Koether's responsibility for making fee payments to the class.

In view of the obvious potential for a conflict of interest, Rules 1.7(b) and 1.10(a) of the *Delaware Rules of Professional Conduct* (DR) proscribe the Koether firm's further representation of the class.

D.R. 1.7(b) provides:

A lawyer shall not represent a client if the representation of that client *may* be materially limited by the lawyer's responsibility to another client or *to a third person,* or *by the lawyer's own interests,* unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; *and*

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved. (emphasis added)

D.R. 1.7(b) therefore appears to address the policy concerns raised by the Court in *Kramer,* while following *Susman*'s case-by-case approach to disqualification.

Under the facts presented, it seems likely that there is an inherent conflict of interest if Natalie Koether, the general partner of Emerald, serves as the class representative and also as attorney for the class. It is also obvious that, under these circumstances, she cannot secure the necessary consent of all the class members to waive the conflict of interest pursuant to D.R. 1.7(b)(2). See *Gould v. Lumonics Research Ltd.,* 495 F.Supp. 294 (N.D.Ill.1980).

■ Because Natalie Koether cannot represent the class as class counsel, all the other attorneys in the Koether firm will also be precluded from serving in that capacity by D.R. 1.10(a), which states:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules *1.7,* 1.8(c), 1.9 or 2.2. (emphasis added)

### XIV

■ D.R. 3.7 appears to present yet another reason for the disqualification of the Koether firm. It provides:

(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Natalie Koether must therefore be precluded from acting as an advocate at trial on behalf of the class as she is the sole general partner of Emerald and, as such, will likely be called to testify during the course of the litigation. I am satisfied that she fits within the definition of a "necessary witness" as the questions of Emerald's true motivations in bringing this action and Emerald's suitability as class plaintiff will likely be continuing issues in this action. See *In re Fine Paper Antitrust Litigation,* 617 F.2d 22 (3d Cir.1980). Contrary to plaintiff's assertions, it does not appear that the taking of Natalie Koether's deposition or the likely calling of her as a witness at trial is motivated simply by a desire to disqualify the Koether firm as class counsel. See *Rainbow Navigation, Inc. v. Yonge,* Del.Ch., C.A. No. 9432-NC, Allen, C., 1988 WL 13564 (Feb. 11, 1988).

Although the provisions of D.R. 3.7(a) disqualify Natalie Koether from serving as class counsel, Subsection (b) might allow another lawyer in the Koether firm to serve as trial advocate, unless precluded by Rules 1.7 or 1.9.

Under all the circumstances, however, I find that D.R. 1.7(b) precludes all lawyers in the Koether firm from representing the class.

I also agree with the defendant that the inherent pressures associated with having to cross-examine Mrs. Koether, a founding partner of the Koether firm, with regards to the allegations of "greenmail" and conflict of interest could materially compromise the lawyer's representation of the class if the lawyer is a member of Mrs. Koether's firm. I also note that all the Koether lawyers will be subject to the same potential financial conflict arising from a possible award of attorney's fees to the firm, which will inure, in part, to Mrs. Koether and themselves. Moreover, even if another attorney in the firm reasonably believes his or her representation will not be adversely affected by these extraneous pressures, the fulfillment of the D.R. Rule 1.7(b) consent requirement is simply not a realistic possibility.

I find, therefore, that D.R. 3.7 and D.R. 1.7(b) provide further support for the disqualification of the Koether firm.

## SUMMARY

### XV

In summary, I find that Emerald Partners may continue to act as class representative but that the Koether firm cannot adequately and fairly represent the interests of the class if Emerald serves as derivative and class plaintiff in this action. In so holding, I note that Emerald's local counsel, Richards, Layton & Finger, has diligently and effectively represented Emerald and, therefore, I do not believe that the class will be prejudiced by the Koether firm's disqualification. While the Koether firm can continue to represent Emerald in pursuit of its individual claims; however, it cannot adequately and fairly represent the interests of the remaining class members.

IT IS SO ORDERED.