# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE STRAIGHT PATH ) 
COMMUNICATIONS INC. ) C.A. No. 2017-0486-SG
CONSOLIDATED STOCKHOLDER ) 
LITIGATION )

## MEMORANDUM OPINION

Date Submitted: February 17, 2022
Date Motion Partially Withdrawn: March 10, 2022
Date Decided: March 11, 2022

Ned Weinberger and Mark Richardson, of LABATON SUCHAROW LLP, Wilmington, Delaware; OF COUNSEL: Jeroen van Kwawegen, Edward G. Timlin, and Alla Zayenchik, of BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, New York, New York; Vincent R. Cappucci and Joshua K. Porter, of ENTWISTLE & CAPPUCCI LLP, New York, New York, *Attorneys for Plaintiffs JDS1, LLC and The Arbitrage Fund.*

Ned Weinberger and Mark Richardson, of LABATON SUCHAROW LLP, Wilmington, Delaware; OF COUNSEL: Jeroen van Kwawegen, Edward G. Timlin, and Alla Zayenchik, of BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, New York, New York, *Attorneys for Intervenor-Plaintiff Ardell Howard.*

Rudolf Koch, Kevin M. Gallagher, Daniel E. Kaprow, John M. O'Toole, and Melissa A. Lagoumis of RICHARDS, LAYTON & FINGER P.A., Wilmington, Delaware; Thomas Uebler, of MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, Delaware; OF COUNSEL: Jason Cyrulnik and Paul Fattaruso, of CYRULNIK FATTARUSO LLP, New York, New York, *Attorneys for Defendants IDT Corporation, Howard Jonas, and The Patrick Henry Trust.*

Kevin R. Shannon, Berton W. Ashman, Jr., Jacqueline A. Rogers, and David A. Seal, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware, *Attorneys for Davidi Jonas.*

**GLASSCOCK, Vice Chancellor**

The privilege of a member of a stockholder class to represent that class in a legal action is not a right. Among the attributes required to enjoy that privilege is a willingness to act as a fiduciary for the benefit of the class as a whole, and not for individual interests not shared with the class at large. That general rule has many permutations, but few more significant than that non-public information obtained as class representative must be used for the benefit of the class in the litigation, and not for purposes of trading on that information in securities for private gain.

Here, the Plaintiffs sought to certify two stockholders of Straight Path Communications Inc. ("Straight Path") as lead representatives of the former stockholders of Straight Path. One of the stockholders has withdrawn from this application. For the reasons below, I find that a factual record is necessary before I can determine the adequacy of the second stockholder entity to serve as class representative, and I continue the motion with leave to supplement the record.

## I. BACKGROUND

Before me is a pending motion for class certification (the "Class Certification Motion") stemming from the sale of Straight Path to Verizon Communications, Inc. ("Verizon") in 2018. My prior opinions have discussed the remaining claims and the factual background in this action at length.[1] In short, JDS1, LLC and The

---

[1] *See In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2018 WL 3120804, at *20 (Del. Ch. June 25, 2018), *aff'd*, 206 A.3d 260 (Del. 2019) [hereinafter "*Straight Path I*"]; see *In re*

1

Arbitrage Fund (together, the "Plaintiffs"), former stockholders of Straight Path,

sought to certify a purported class for receipt of damages flowing from diverted

merger consideration in connection with the Straight Path-Verizon sale in 2018 (the

"Merger").[2]  The defendants opposed both the class and the appointments of JDS1,

LLC ("JDS1") and The Arbitrage Fund ("TAF") as representative plaintiffs.[3]  JDS1

has withdrawn its application to so serve.  Facts outlining the pertinent issues are

laid out below.

*A. Factual Overview*[4]

1. <u>The Parties</u>

The remaining movant for purposes of this Memorandum Opinion is a

stockholder of Straight Path.  Opposing the Class Certification Motion are the "IDT

Defendants" (composed of the separate defendants IDT Corporation, Howard Jonas,

and The Patrick Henry Trust).  Davidi Jonas, another defendant in the matter

*Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2022 WL 484420 (Del. Ch. Feb. 17, 2022) [hereinafter "*Straight Path II*"].
[2] *See generally* Pls.' Opening Br. Supp. Mot. for Class Certification, Dkt. No. 209 [hereinafter "Class Cert. OB"].
[3] *See generally* IDT Defs.' Opp'n Pls.' Mot. for Class Certification, Dkt. No. 433 [hereinafter "Class Cert. Opp'n"].
[4] The facts included in this section are strictly those necessary to resolution of the motion before me.  A more detailed recitation may be found in my prior opinions *Straight Path I* and *Straight Path II*.  *See Straight Path I*, 2018 WL 3120804, at *2–9; *Straight Path II*, 2022 WL 484420, at *2–8.  Citations in the form of "Kaprow Decl. —" refer to the Transmittal Decl. of Daniel E. Kaprow, Esquire Pursuant to 10 *Del. C.* § 3927 Supp. IDT Defs.' Opp'n to Pls.' Mot. Class Certification, Dkt. No. 434.  Citations in the form of "Kaprow Decl., Ex. —" refer to the exhibits attached to the Kaprow Decl., Dkt. Nos. 434–36.

(together with the IDT Defendants, the "Defendants"), has filed joinders to the IDT Defendants' briefing.

IDT Corporation ("IDT") is the former parent of Straight Path, which IDT spun off on July 31, 2013.[5]  As a result of the spin-off, Straight Path became a publicly traded company.[6]  Straight Path is now a non-party in the action, but was previously a nominal defendant prior to the issuance of *Straight Path I.*[7]

This lawsuit has been styled as a class action, and the Class Certification Motion is now before me.  The proposed class is defined as "[a]ll record and beneficial holders of Straight Path Class B Common Stock, as of February 28, 2018 (the date of the consummation of the Merger), who received Merger consideration, together with their respective successors and assigns," subject to certain exceptions (the "Proposed Class").[8]

A short statement regarding the potential class representative for the Plaintiffs, the other stockholder Plaintiff which has withdrawn its request to serve as class representative, and an intervenor-Plaintiff in the action, follows.

---

[5] *See Straight Path I,* 2018 WL 3120804, at *2.
[6] *See id.*
[7] *See id.* at *20 (finding derivative claim pled in Count IV of Complaint moot, but noting the remainder of claims are direct).
[8] Class Cert. OB 3–4.

3

### a. Former Potential Class Representative JDS1

Plaintiff JDS1 is an investment vehicle that held Straight Path Class B Common Stock at all pertinent times.[9] JDS1 brought its original complaint against the Defendants, as well as against three directors of Straight Path (the "Special Committee Directors") on July 5, 2017.[10] Seeking dismissal from the case, the Special Committee Directors made a "70-pages plus"[11] proffer of confidential materials (the "Confidential Proffer") to JDS1 via counsel on July 21, 2017.[12] Specifically, the counsel who received the Confidential Proffer were from the law firms Bernstein Litowitz Berger & Grossmann LLP ("BLBG") and Labaton

---

[9] *Id.* at 1 (identifying that JDS1 held shares of Class B Common Stock as of February 28, 2018). The IDT Defendants have questioned in their briefing whether the date of February 28, 2018 is appropriate in defining the Proposed Class. *See, e.g.*, Class Cert. Opp'n 35–36 (suggesting the appropriate threshold date is the date of Straight Path's public announcement of the challenged transaction—the settlement of the indemnification claim—rather than the date of consummation of the Merger). I do not reach that question in this Memorandum Opinion. The IDT Defendants have not challenged JDS1 on this basis. *See generally* Class Cert. Opp'n.

[10] Verified Class Action and Derivative Compl. for Breach of Fiduciary Duties, Dkt. No. 1. Straight Path was also a nominal defendant under the original complaint. *See id.*

[11] *See* IDT Defs. Sur-Reply Br. Further Opp'n Pls.' Mot. for Class Certification 10, Dkt. No. 520 [hereinafter "Class Cert. Sur-RB"].

[12] Class Cert. Opp'n 6; Pls.' Reply Br. Further Supp. Mot. for Class Certification 29, Dkt. No. 500 [hereinafter "Class Cert. RB"].

Sucharow LLP ("Labaton").[13]  The Special Committee Directors were dismissed from the action without prejudice later that month.[14]

In the course of discovery, JDS1 indicated that it had a short position on IDT stock "at times," including dates in 2017, 2018, and early 2019.[15]

### b. Potential Class Representative TAF

Plaintiff TAF is a mutual fund managed by an investment advisor.[16]  This same investment advisor manages certain other affiliates (the "TAF Affiliates").[17]

TAF first purchased shares in Straight Path on May 8, 2017.[18]

---

[13] Kaprow Decl., Ex. 6 (the email providing the confidential proffer).  The email was sent by Shearman & Sterling LLP, who was representing the Special Committee Directors, and copied a second Shearman & Sterling LLP attorney as well as Morris Nichols Arsht & Tunnell LLP (also retained to represent the Special Committee Directors).  *See id.*; *see Straight Path II*, 2022 WL 484420, at *6 (identifying Shearman & Sterling LLP as the Special Committee Directors' attorneys); *see also* Entry of Appearance of Jon E. Abramczyk and Alexandra M. Cumings of Morris, Nichols, Arsht & Tunnell LLP on behalf of Defs. K. Chris Todd, William F. Weld, and Fred S. Zeidman, Dkt. No. 16 (identifying Morris Nicholas Arsht & Tunnell as attorneys for the Special Committee Directors).

[14] Granted (Stipulation and [Proposed] Order of Dismissal of Certain Defs. Without Prejudice), Dkt. No. 37.

[15] *See* Kaprow Decl., Ex. 3, at 7–8.

[16] Class Cert. RB 26; *see also Straight Path I*, 2018 WL 3120804, at *2.

[17] *See* Class Cert. RB 26; *see also* Kaprow Decl., Ex. 4 at Ex. E (identifying "Water Island Capital, LLC" as the investment advisor in common).

[18] *See* Class Cert. Opp'n 5; Class Cert. RB 36; *see also* Kaprow Decl., Ex. 4 at Ex. A.

TAF filed its original complaint via its counsel in a separate action on July 11, 2017.[19] TAF's complaint did not name the Special Committee Directors as defendants.[20]

Counsel for JDS1 and TAF filed a Stipulation and Proposed Order for Consolidation on July 14, 2017, which designated JDS1 and TAF as "Co-Lead Plaintiffs," and designated BLBG, Labaton, and Entwistle & Cappucci LLP ("Entwistle") as "Co-Lead Counsel."[21] The order was granted on July 24, 2017.[22]

Following the receipt of the Confidential Proffer by certain, but not all, of the Co-Lead Counsel on July 21, 2017, TAF Affiliates purchased several short positions in IDT stock, and they sold IDT stock short at least once more in late 2017.[23] TAF itself never traded in IDT,[24] but both TAF and its affiliates did make several purchases in Straight Path.[25]

---

[19] See Class Cert. Opp'n 6; see also Granted (Stipulation and [Proposed] Order for Consolidation) 2, Dkt. No. 33. Note that the order cited here includes a clearly inaccurate date of December 7, 2015, for the date of filing of the TAF complaint; nonetheless, the order supports the fact of consolidation of the two originally distinct actions. See id.

[20] See The Arbitrage Fund v. Howard S. Jonas, C.A. No. 2017-0502-SG, Verified Class Action Compl. (July 11, 2017), Dkt. No. 1.

[21] See Stipulation and [Proposed] Order for Consolidation, Dkt. No. 10.

[22] See generally Granted (Stipulation and [Proposed] Order for Consolidation) 2, Dkt. No. 33.

[23] Kaprow Decl., Ex. 4 at Ex. E.

[24] Class Cert. RB 26; see also Kaprow Decl., Ex. 4, at Ex. E (identifying "Funds Advised by Water Island Capital, LLC's Trades in IDT Corporation," but not listing any TAF trades).

[25] Kaprow Decl., Ex. 16, at Ex. A (listing several TAF trades in Straight Path following the commencement of TAF's action); id. at Ex. 4, at Ex. D (listing TAF Affiliates' trades in Straight Path following the commencement of the TAF action).

6

### c. Intervenor-Plaintiff Ardell Howard

Ardell Howard moved to intervene in the case on October 14, 2020 as an additional plaintiff.[26] Per her declaration of October 13, 2020, she owned shares of Straight Path "at the time of the announcement of the Merger and continued to hold such shares through the closing of the Merger."[27] She further indicated in that declaration that she would adopt the operative amended complaint, filed August 29, 2017 (the "Complaint"),[28] and that "[i]f called upon, [she would] also [be] prepared to serve as a lead plaintiff and/or class representative."[29]

Ardell has also represented that she has read and agrees to be bound by the confidentiality order entered in this case on April 18, 2019 (the "Confidentiality Order").[30]

I granted Ardell's motion to intervene on July 20, 2021, and she entered the case as an individual plaintiff.[31]

---

[26] Mot. to Intervene or for Permissive Joinder, Dkt. No. 339. The similarity of Ms. Ardell Howard's surname to the first name of Mr. Howard Jonas could cause confusion, since there are two Defendants Jonas, to whom I refer by first name for the sake of clarity. Accordingly, I refer to Ms. Howard as "Ardell"; no disrespect is intended.

[27] Decl. of Ardell Howard Pursuant to Delaware Supreme Ct. Administrative Order No. 11, In re COVID-19 Precautionary Measures ¶ 2, Dkt. No. 339 [hereinafter "Howard Decl."].

[28] Id. ¶ 4.; see also Verified Consolidated Am. Class Action and Derivative Compl., Dkt. No. 62 [hereinafter "Compl."]

[29] Howard Decl. ¶ 4.

[30] Id. ¶ 5; see also Granted (Stipulation and [Proposed] Order Governing the Produc. and Exchange of Confidential and Highly Confidential Information), Dkt. No. 157.

[31] See Tr. of 7.20.21 Ct.'s Ruling on Mot. to Intervene and Scheduling Conference 6:3–4, Dkt. No. 498 [hereinafter "Mot. to Intervene Tr."]; see also id. at 20:2–3.

## B. Procedural History

This litigation began on July 5, 2017.[32] On July 24, 2017, I denied Plaintiff JDS1's request for expedition, and consolidated the JDS1 action with the complaint previously filed by Plaintiff TAF.[33] At that same July 24 hearing, Plaintiff JDS1 indicated that they were engaged in discussions with the Special Committee Directors to have them dismissed from the case without prejudice.[34]

The Plaintiffs then served the amended Complaint, containing four counts.[35] One of the counts was mooted following the closing of the Merger,[36] and three direct claims for breach of fiduciary duty or aiding and abetting breach of fiduciary duty against various defendants survive.[37]

A confidential mediation took place on June 14, 2018.[38]

The Defendants moved to dismiss, and I denied the motions to dismiss in my prior opinion on June 25, 2018.[39] The IDT Defendants sought an interlocutory appeal, which I certified on July 26, 2018.[40] The Delaware Supreme Court affirmed

---

[32] *See supra* note 10 and accompanying text.

[33] *See* July 24, 2017, Telephonic Oral Arg. Pls.' Mot. for Expedited Proceedings and Rulings of the Ct., 14:13–22 (granting consolidation), Dkt. No. 44; *see id.* at 37:9–11 (denying expedition).

[34] *See id.* at 11:21–12:2; *see also* Granted (Stipulation and [Proposed] Order of Dismissal of Certain Defs. Without Prejudice), Dkt. No. 37.

[35] *See* Compl.

[36] *See Straight Path I*, 2018 WL 3120804, at *8, *20.

[37] Compl. ¶¶ 120–33.

[38] *See* Kaprow Decl., Ex. 8 (mediation sign-in sheet dated June 14, 2018).

[39] *Straight Path I,* 2018 WL 3120804.

[40] *See* Letter Op. and Order, Dkt. No. 124.

on February 22, 2019.[41]  I entered the Confidentiality Order on April 18, 2019.[42]

Discovery followed.

Individual Plaintiff Ardell Howard moved to intervene in October 2020,[43] and I granted the motion to intervene following briefing and oral argument.[44]

The IDT Defendants and Davidi Jonas each filed a motion for summary judgment on July 6, 2021.[45]  *Straight Path II* denied both motions in full.[46]

Briefing on the Class Certification Motion began in January 2020 and ended in October 2021.[47]  I held oral argument with respect to the Class Certification Motion on November 9, 2021, and I deemed the matter fully submitted at the time the claims survived summary judgment in *Straight Path II*.[48]  JDS1 withdrew its request to serve as class representative on March 10, 2022.[49]

---

[41] *See IDT Corp. v. JDS1, LLC*, 206 A.3d 260 (Del. 2019).
[42] Granted (Stipulation and [Proposed] Order Governing the Produc. and Exchange of Confidential and Highly Confidential Information), Dkt. No. 157.
[43] *See* Mot. to Intervene or for Permissive Joinder, Dkt. No. 339.
[44] *See generally* Mot. to Intervene Tr.; *see also id.* at 20:2–3.
[45] *See* Def. Davidi Jonas's Mot. Summ. J, Dkt. No. 439; IDT Defs.' Mot. Summ. J., Dkt. No. 440.
[46] *See generally Straight Path II*, 2022 WL 484420.
[47] *See* Class Cert. OB; *see also* Pls.' Sur-Sur-Reply Br. Further Supp. Mot. for Class Certification, Dkt. No. 525 [hereinafter "Class Cert. Sur-Sur RB"].
[48] *See* Tr. of 11.9.21 Oral Arg. re Mot. for Class Certification, Class Representatives, and Mots. Summ. J., Dkt. No. 531 [hereinafter "Oral Arg."]; *see also Straight Path II*, 2022 WL 484420, at *1.
[49] Joint Letter to V.C. Glasscock from Lead Pls. and Additional Pl. Re Class Certification and Lead Pl. Issues 1, Dkt. No. 540 [hereinafter "March 10 Letter"].

## II. ANALYSIS

The Plaintiffs seek to certify the Proposed Class and to establish TAF as the lead plaintiff litigating this action for the Proposed Class.[50]

When filing as a representative plaintiff for a class of stockholders, that party seeks out the role of fiduciary for the class.[51]  "[W]hile the stockholders have chosen the corporate director or manager, they have no such election as to a plaintiff who steps forward to represent them.  He is a self-chosen representative and a volunteer champion."[52]  As a fiduciary, the representative plaintiff owes the class a "duty of the finest loyalty,"[53] as she has undertaken to "assert rights of others" and therefore "assumes an obligation to such persons to act with respect to the claims asserted loyally and not to seek or to obtain a private benefit by reason of the power resulting from such representative status."[54]

---

[50] I remain cognizant that the claims being asserted in this action are direct in nature and have chosen to include certain supporting citations pertaining to caselaw dealing with derivative representative plaintiffs, relying on the "analogous" nature of Chancery Court Rules 23 and 23.1. *See Emerald P'rs v. Berlin,* 564 A.2d 670, 673 (Del. Ch. 1989).

[51] *See Steinhardt v. Howard-Anderson,* 2012 WL 29340, at *8 (Del. Ch. Jan. 6, 2012) (citing *Emerald P'rs,* 564 A.2d at 673; then citing *Youngman v. Tahmoush,* 457 A.2d 376, 379 (Del. Ch. 1983)); *see also OptimisCorp v. Atkins,* 2021 WL 2961482, at *5–7 (Del. Ch. July 15, 2021) (discussing the fiduciary obligations of the derivative representative plaintiff in a class action). Although *OptimisCorp* deals with a derivative representative plaintiff, some of its policy reasoning applies equally to those representative plaintiffs in class actions asserting direct claims as well.

[52] *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 549 (1949) (discussing the fiduciary character of acting as a representative derivative plaintiff).

[53] *Steinhardt,* 2012 WL 29340, at *8 (quoting *Barbieri v. Swing-N-Slide Corp.,* 1996 WL 255907, at *5 (Del. Ch. May 7, 1996)).

[54] *OptimisCorp,* 2021 WL 2961482, at *7 (quoting *Lacos Land Co. v. Arden Grp., Inc.,* 1986 WL 14525, at *3 (Del. Ch. Dec. 24, 1986)).

In order to grant the Class Certification Motion, I first determine whether an adequate representative plaintiff exists, for it would otherwise be premature to certify the Proposed Class.

The IDT Defendants raised the question of whether either JDS1 or TAF is a suitable representative plaintiff on the basis of certain trades made in IDT and Straight Path stock after the initiation of this suit.[55] They also attacked each potential representative plaintiff on the basis of purported discovery misconduct and various other individual allegations.[56] JDS1 has withdrawn its motion to serve as class representative.[57] I address the purportedly improper trades, below.

### 1. The Improper Trading Allegations

*Steinhardt v. Howard-Anderson* tackles the issue of representative plaintiffs engaging in improper trading.[58] There, a merger was contemplated between two entities, Calix and Occam, and the plaintiffs sued derivatively on behalf of Occam.[59] One of the derivative representative plaintiffs, Steinhardt, began short selling stock in Calix, despite the fact that he was also seeking, as a representative plaintiff for a class, to enjoin the merger between Calix and Occam.[60] Temporally, Steinhardt's

---

[55] *See* Class Cert. Opp'n.
[56] *See generally id.* In light of my decision here, I need not address this second set of allegations.
[57] *See* March 10 Letter 1.
[58] *Steinhardt*, 2012 WL 29340.
[59] *Id.* at *2–3.
[60] *Id.* at *4.

short-selling began near the end of discovery in the case.[61]  The Court found that as a policy matter, trading by representative plaintiffs on the basis of information obtained through litigation is unacceptable and undermines the integrity of the litigation process.[62]  Steinhardt had breached his fiduciary duties while serving as a class representative and had violated the confidentiality order in the case.[63]  He was dismissed from the case with prejudice.[64]

*Steinhardt* also included a second derivative representative plaintiff who traded on two occasions, yet was not dismissed from the case.[65]  This individual, Chen, sold a number of shares of the nominal defendant corporation Occam's stock prior to the entry of a confidentiality order in the case, testifying that he expected that he would have a "limited" ability to trade once a confidentiality order was enacted.[66]  He further testified that he accidentally sold additional shares in the nominal defendant corporation via a "fat-finger" error in attempting to liquidate

---

[61] *Id.*

[62] *Id.* at *8.

[63] *Id.* at *10.

[64] *Id.*  Additionally, plaintiff Steinhardt was subject to sanctions, including being barred from receiving recovery flowing from the litigation, being required to self-report to the Securities and Exchange Commission, being ordered to disgorge profits, and being directed to disclose his prior improper trading in any future application to serve as representative plaintiff.  *See id.* at *1.  The trading in *Steinhardt* occurred following substantial discovery, and Steinhardt himself admitted that his trading decisions were influenced by reports he received from another derivative representative plaintiff about the ongoing litigation.  *Id.* at *4, *9.  The conduct questioned here does not approach the same level as in *Steinhardt*, and in any event the Defendants have not sought sanctions here.  As such, I do not consider sanctions in this Memorandum Opinion.

[65] *See generally Steinhardt*, 2012 WL 29340.

[66] *Id.* at *3.

stock to satisfy a margin call.[67] The Court described these sales as "materially different" from Steinhardt's, indicating that Chen's testimony regarding the inadvertent "fat-finger" sale was credible, and that the sale of shares prior to the entry of the confidentiality order was permissible as the "defendants had not yet produced any non-public information."[68]

The rationale for the *Steinhardt* ruling is simple enough: representative plaintiffs and their counsel in litigation "almost invariably" receive non-public information that is unavailable to an ordinary investor.[69] "[T]he fact that a representative plaintiff does not directly have access to confidential information produced in discovery is not the determinative issue."[70] Rather, the representative plaintiff has access to the representative plaintiff's *counsel*—who is required to provide her client with updates regarding the litigation.[71] This is not to imply anything nefarious regarding counsel's provision of this non-public information to the client: in fact, absent a limiting order, it is counsel's duty to so communicate, to permit the client to make informed decisions regarding the litigation. The advice of counsel will necessarily depend on counsel's view of how the litigation is progressing and thus provides the representative plaintiff with information other

---

[67] *Id.* at *6–7.
[68] *Id.* at *14.
[69] *Id.* at *10.
[70] *Id.*
[71] *See id.*

stockholders cannot obtain.[72] Use of such information for purposes other than those of the class itself represents a breach of the plaintiff's fiduciary duty to the class.

I need no longer address the allegations made against JDS1, which no longer seeks to be lead counsel. I do note that JDS1 was the original plaintiff prior to the consolidation of this suit and brought its complaint on July 5, 2017 while represented by its counsel Labaton and BLBG.[73] That original complaint named as defendants the Special Committee Directors of Straight Path.[74]

JDS1 took multiple short positions in IDT stock following the receipt of confidential information—the Confidential Proffer from the Special Committee Defendants, provided to certain of the Co-Lead Counsel on July 21, 2017.[75] JDS1 also took short positions following the confidential mediation that took place on June 14, 2018.[76] Notably, this receipt of confidential information predated the Confidentiality Order (entered April 18, 2019).[77] While I need not decide whether this trading activity in fact was so inimical to JDS1's role as fiduciary as to be disqualifying (and while the Plaintiffs made, in briefing, a number of arguments as

---

[72] *See id.* ("Indeed, the most value-relevant information may not be any specific document or information obtained in discovery, but rather counsel's overall sense of how well discovery has gone, whether there is a genuine chance for an injunction, and whether the claims are likely to lead to a favorable litigation outcome or settlement.").

[73] *See supra* note 10 and accompanying text.

[74] *See supra* note 10 and accompanying text.

[75] *See supra* notes 10–15 and accompanying text; *see also* Kaprow Decl., Ex. 3, at 7–8.

[76] *Id.* at Ex. 3, at 8; *id.* at Ex. 8.

[77] Granted (Stipulation and [Proposed] Order Governing the Produc. and Exchange of Confidential and Highly Confidential Information), Dkt. No. 157.

14

to why this behavior is not fatal to JDS1's status as a purported representative plaintiff),[78] the allegations of trading on non-public information are troubling. The allegations, I note, are both denied and not supported by direct evidence, but if true would be disqualifying, in my view, as inconsistent with the actions this Court expects of a volunteer fiduciary.

The improper trading allegations with respect to TAF are more attenuated. TAF itself is not alleged to have traded in IDT, but made numerous trades in Straight Path following the initiation of its respective litigation.[79] These trades as reported in discovery began May 8, 2017, and ended on February 14, 2018.[80] Meanwhile, certain identified affiliates of TAF, managed by the same investment advisor, traded in both IDT *and* Straight Path during the pendency of this litigation.[81]

I first address the allegations of trading in IDT. The timing of consolidation in this action is significant with respect to trading in IDT potentially occurring in connection with the Confidential Proffer. The proposed stipulation consolidating

---

[78] *See, e.g.*, Class Cert. RB; Class Cert. Sur-Sur RB.

[79] Kaprow Decl., Ex. 4, at Ex. A. Of some note, Straight Path was a nominal defendant at the time of the TAF Straight Path trades. *See generally Straight Path I*, 2018 WL 3120804 (identifying Straight Path as a nominal defendant as of June 25, 2018).

[80] These dates are not inclusive of the receipt of Verizon stock for Straight Path stock upon the closing of the Merger, which is also included as the last trade on Exhibit A to Exhibit 4. *See* Kaprow Decl., Ex. 4, at Ex. A. TAF traded in Straight Path prior to the initiation of its litigation on July 11, 2017; the May 2017 date is identified as the starting point here for purposes of reflecting all information garnered in discovery. *See id.*; *see also supra* note 20 and accompanying text.

[81] *See id.* at Ex. 4, at Exs. D–E; *see* Class Cert. RB 26.

the JSD1 and TAF complaints was filed on July 14, 2017.[82] At that time, TAF was represented by Rosenthal, Monhait & Goddess, P.A. and Entwistle.[83]

On July 21, 2017, the Confidential Proffer was emailed by the Special Committee Directors' counsel—again, the Special Committee Directors were *not* named as defendants in the original TAF complaint, and thus were not motivated to share the documents with TAF—to BLBG and Labaton, JDS1's counsel.[84] Notably, Rosenthal, Monhait & Goddess, P.A. and Entwistle did not receive the original email transmitting the Confidential Proffer.[85]

The order granting the consolidation of the TAF and JDS1 actions was not entered until July 24, 2017, at which time Entwistle joined Labaton and BLBG as Co-Lead Counsel.[86]

There is a factual question, then, as to whether and when TAF's counsel—now in part Co-Lead Counsel—received the information from the Confidential Proffer, and, further, whether that information can be imputed not only to TAF but to the TAF Affiliates (which traded in IDT, although TAF did not). At oral argument, counsel from Entwistle informed me that the Confidential Proffer was not given to TAF or to "its counsel at that time, us," and that, even had TAF's counsel

---

[82] Stipulation and [Proposed] Order for Consolidation, Dkt. No. 10.
[83] *See id.*
[84] *See supra* notes 12–13 and accompanying text; *see also* Kaprow Decl., Ex. 6, at BLBG0000336.
[85] *See id*. at Ex. 6, at BLBG0000336 (email delivering the Confidential Proffer).
[86] Granted (Stipulation and [Proposed] Order for Consolidation) ¶ 3, Dkt. No. 33.

received the documents, it was unclear whether TAF would "have passed it on to their affiliated funds" given the differences in the funds' investors and strategies.[87] Taking this as true as of July 24, 2017, the record does not demonstrate whether the Confidential Proffer was sent along to Entwistle upon its designation as Co-Lead Counsel. If so, TAF presumably should thereafter have avoided trading in IDT. But it does not necessarily follow that TAF *Affiliates* were barred from trading in IDT, depending on their decisionmakers' access to non-public information. Again, the pertinent inquiry is not merely whether the TAF Affiliates had *direct* access to non-public documents; the Court must also consider whether the TAF Affiliates had access to TAF's counsel such that the TAF Affiliates indirectly could obtain non-public information.[88]

I cannot resolve the question of whether the TAF Affiliates' trades in IDT should disqualify TAF on this record. If TAF still seeks to stand as representative plaintiff in this action, an evidentiary hearing to determine whether the TAF Affiliates' trades were improper will be required.

I also briefly address TAF and its affiliates' trades in Straight Path. Written caselaw where the purported representative plaintiff trades in the company that allegedly suffered the injury is comparatively slim and tends toward a *sale* of shares

---

[87] Oral Arg., 147:5–148:3.
[88] *See supra* notes 70–71 and accompanying text.

by the representative plaintiff rather than a purchase.[89]  Despite these distinguishing facts, the same general concerns apply, as elucidated by *In re Celera Corporation Shareholder Litigation*, a Court of Chancery case from 2012.[90]

In *Celera*, the putative representative plaintiff sold its shares in the pertinent company four days prior to the closing of a merger the plaintiff had challenged.[91] The sales were characterized as "careless and cavalier," apparently motivated by the desire to capture a modest increase in stock price.[92]  However, the sales occurred after "all material information regarding the lawsuit, settlement, and transaction were disclosed to the marketplace."[93]  Accordingly, the Court still certified the representative plaintiff, though it did so among multiple warnings:

> Lead plaintiffs must remain committed to fulfilling their obligations to those they represent throughout the litigation.  Among other things, that should include thinking about more than the technical permissibility of their conduct, but also how their conduct is likely to be perceived . . . .  Technically permissible or not, th[e] choice [to trade] failed to reflect an appropriate level of regard and respect for [plaintiff's] position as a fiduciary for the class.  As this case

---

[89] *See, e.g.*, *In re Celera Corp. S'holder Litig.*, 2012 WL 1020471, at *1 (Del. Ch. Mar. 23, 2012), *aff'd in part, rev'd in part on other grounds*, 59 A.3d 418 (Del. 2012) (citing *Steinhardt*, 2012 WL 29340; then citing *In re Labarge, Inc. S'holder Litig.*, C.A. No. 6368-VCN (Del. Ch. Jan. 3, 2012) (TRANSCRIPT); and then citing *In re J. Crew Grp., Inc. S'holders Litig.*, C.A. No. 6043-CS (Del. Ch. Dec. 14, 2011) (TRANSCRIPT)) (approving, "if only barely," a representative plaintiff that had sold all of its shares in the pertinent corporation prior to the closing of a merger).

[90] The reversal in *In re Celera Corp.* pertained solely to an issue not pertinent here.  *See In re Celera Corp. S'holders Litig.*, 59 A.3d 418 (Del. 2012).  Additionally, I note that the *In re Celera Corp.* Chancery opinion treats the question of improper trading as a question of "adequacy" under Rule 23(a).  *See In re Celera Corp.*, 2012 WL 1020471, at *14.  I have followed the *Steinhardt* approach in treating the existence of improper trading as an issue separate from the other requirements of Rule 23(a).  *See generally Steinhardt*, 2012 WL 29340.

[91] *In re Celera Corp.*, 2012 WL 1020471, at *7.

[92] *See id.* at *1, *7.

[93] *Id.* at *15.

18

demonstrates, Delaware courts have good reason to expect more from those who would serve as lead plaintiffs in representative litigation.[94]

The *Celera* court thus admonished the representative plaintiff, but acknowledged that its sales, based on "carelessness or imprudence," differed substantially from the offense in *Steinhardt*.[95]

Although there is a factual difference between trading in Straight Path and trading in IDT, the main inquiry must still be whether TAF and its affiliates traded on non-public information, as so doing would be incompatible with the circumspection expected of voluntary fiduciaries, and thus would make TAF an inappropriate lead plaintiff.[96] The number and timing of trades in Straight Path alleged to have been undertaken by TAF and TAF Affiliates since the initiation of this litigation are, frankly, troubling in light of TAF's position as a volunteer fiduciary.[97] Using non-public information obtained as a fiduciary for personal gain is not consistent "with the behavior expected of a self-designated fiduciary."[98] Again, service as a class representative is not a right that inheres in ownership of stock; it is an equitable privilege extended by a court of equity to the extent

---

[94] *Id.* at *16.

[95] *See id.* at *15.

[96] *Id.* ("[B]ecause a lead plaintiff is a fiduciary to the class, the [*Steinhardt*] analysis relied on the black-letter principle that '[i]t is an act of disloyalty for a fiduciary to profit personally from the use of information secured in a confidential relationship.'").

[97] *See* Kaprow Decl., Ex. 4, at Exs. A, D.

[98] *Steinhardt*, 2012 WL 29340, at *10.

compatible with the best interests of the class and of justice. Accordingly, denial of a class representative status is no punishment, and requires only a finding by the court that such service is not in the interests of the class and of justice. However, the record is not sufficient to support such a finding here. Again, if TAF seeks to move forward as the representative plaintiff in this action, I will require an evidentiary hearing with submission of facts by the parties so that I may resolve the improper trading issue on a full record.

### 2. Ardell Howard as a Potential Lead Plaintiff

Another path to class certification may exist. As noted at the outset, there is an intervenor-plaintiff in the case who has represented that, "[i]f called upon," she would be prepared to serve as a lead plaintiff or class representative.[99] I additionally note that the IDT Defendants have previously indicated they would want to conduct some discovery regarding Ardell as a class representative if she were to be named the lead plaintiff moving forward.[100]

I urge the Plaintiffs and Co-Lead Counsel to confer and determine their preferred route forward with respect to the Class Certification Motion.

\* \* \*

---

[99] Howard Decl. ¶ 4.
[100] Mot. to Intervene Tr. 9:10–14; *see id.* at 10:3–14 .

This Memorandum Opinion does not address the Rule 23(a) factors of typicality, adequacy, commonality, and numerosity, or the Rule 23(b) framework, because at present no motion is pending naming an adequate lead plaintiff in light of whom I can assess certification of the Proposed Class. As such, it would be premature to consider these issues now. If necessary, I will take these concerns into consideration once the parties have informed me how they will proceed.

### III. CONCLUSION

The Class Certification Motion is CONTINUED with respect to TAF, with leave to supplement the record. The parties should confer and inform me as to their preference for moving forward with respect to the Class Certification Motion.